## School District of Centralia Borough

John E. Lavelle and Howard R. Berniger, for Centralia Borough School District.

Harriet E. Bailey, for Centralia Borough.

R. S. Hemingway and Frank Gallagher, for the Centralia Mining Company and the Coates Coal Company.

KREISHER, P. J., March 26, 1951.—In 1940 the record title of all of the subsurface underlying the entire Borough of Centralia, this county, was in the name of the Western Middle Field Coal Company, and on March 18, 1941, title to this subsurface was transferred by a deed to William E. Seaberg, etc. The deed contains a description of four tracts of land, containing in all approximately 143 acres.

Each of these tracts was assessed separately as unseated coal lands, and the annual tax thereon was approximately $9,000 per annum. The taxes for 1940 and 1941 remained unpaid. In 1943 William E. Seaberg, etc., conveyed the record title to these four tracts of land to the Nogard Corporation, which likewise failed to pay the taxes assessed against this property for the years 1940 and 1941. Thereafter, on July 27, 1945, after due advertisement, and in accordance with the act of assembly in such cases made and provided, the Treasurer of Columbia County exposed the tracts of land at public sale, at which time the four properties were struck down to the County Commissioners of Columbia County. The county treasurer executed a treasurer's deed to the county commissioners for the

tracts of land, who at present are the record owners of the land, the same not having been redeemed by the previous owner or any other party in interest.

On July 5, 1950, a petition on behalf of the School District of the Borough of Centralia and the Borough of Centralia was presented to this court, praying that the court approve the sale of the four tracts of land by the county commissioners to the school district and the Borough of Centralia for the sum of $15,000. This petition was brought under the provisions of the Act of May 21, 1937, P. L. 787, as amended, 72 PS §5878a, b, c and d, and petitioners sought to seek title to these tracts of land by reason of the authority conferred by the legislature upon political subdivisions of this Commonwealth to acquire pillars in an anthracite coal mine necessary for support of the surface by the Act of May 18, 1949, P. L. 1474, 53 PS §2691. In accordance with the Act of May 21, 1937, as amended, permitting the county to sell at private sale any real property purchased at tax sale at a sum less than all of the taxes, penalties and interest due, subject to the approval of the court of common pleas, the court made an order fixing a time for hearing on the petition, and directing due advertisement be given thereof.

Thereafter, on July 31, 1950, and prior to the date fixed for hearing on the petition, the Centralia Mining Company and the Coates Coal Company presented a petition to the court requesting the right to intervene in the proceedings, setting forth that petitioners are Pennsylvania corporations engaged in coal mining operations in the immediate area of the land proposed to be sold. The petition further sets forth that petitioners entered into extended discussions with the officials of the political subdivisions, and that they offered to pay the county commissioners the sum of $15,000 in compromise of the taxes, and agreed to convey to the political subdivisions all of the subsurface under-

lying the built-up area of the borough, retaining a small portion of the entire area for limited strip mining operations.

On the date fixed for hearing the respective parties appeared and agreed that the matter be continued pending further negotiations, and the court granted the continuance. On August 8, 1950, counsel of record filed a stipulation, agreeing that the rule theretofore issued on the petition to intervene be made absolute, and on the same date the court made an order making the rule absolute and permitting the coal companies to intervene in the proceedings.

On August 10, 1950, the intervening coal companies presented a motion to dismiss the petition of the political subdivisions, requesting the approval by the court of the sale to them by the county commissioners of the land. On August 12, 1950, counsel for the respective political subdivisions filed an answer to the motion to dismiss, and the respective parties thereafter held frequent meetings, endeavoring to arrive at an amicable settlement of the entire matter. Some of these meetings were held in the presence of the court, and others were held in the absence of the court. These negotiations continued until February 6, 1951, at which time a resolution was adopted and agreed to by the political subdivisions of the borough and the intervening coal companies. We here note that counsel for the Coates Coal Company made the following statement:

"By Mr. Hemingway:

"My associate, Mr. Gallagher, and I are authorized by the Coates Coal Company to stipulate that they agree to the Resolutions adopted on February sixth, Nineteen Fifty-one by the School Board of the School District of the Borough of Centralia, and by the Centralia Borough Council, as amended by Stipulation of Counsel in this hearing, and that the Coates Coal Com-

pany is ready and willing to pay the amount stipulated in the Resolution, Sixteen thousand Dollars, for the entire tract of land sold to the County Commissioners at Treasurer's Sale on July twenty-seventh, Nineteen Forty-five, as herein before stated by the Chief Clerk of the County Commissioners, upon receipt of a deed for that tract from the County Commissioners.

"The Coates Coal Company agrees to be bound by all of the provisions of said Resolution of the two municipalities, as amended by Stipulation of Counsel in this hearing."

"The aforementioned resolution as modified by stipulation of counsel reads as follows:

## "RESOLUTION

"*Be it resolved* by the School Board of the School District of the Borough of Centralia and by the Centralia Borough Council in joint meeting duly assembled on the 6th day of February, A. D. 1951:

"*That whereas* the said School District and the said Borough Council are' jointly engaged in an effort to obtain title to the sub-surface underlying the Borough of Centralia, so that the said sub-surface shall remain intact as it is at the present time for the protection of the owners of surface properties within the Borough limits.

"*And whereas* a proceeding has been instituted in the Court of Common Pleas of Columbia County to No. 13 May Term 1950, seeking the approval of the said Court of a private sale of the said sub-surface by the County Commissioners of Columbia County to the said School District and the said Borough of Centralia.

"*And whereas* the Coates Coal Company has filed its petition to the said Number and Term to intervene as an interested party and has been made a party of record.

"*And whereas* the said Coates Coal Company has made an offer to purchase certain of the sub-surface

lying within the limits of the Borough of Centralia for the purpose of conducting strip mining operations.

"*And whereas* the officials of the said Coates Coal Company have this day met with the said School Board and the said Borough Council, and a meeting of the minds having been reached in the course of the said meeting.

"*And whereas* it is desired by the said School Board and the said Borough Council that the terms, conditions, and provisions agreed upon at said meeting be made a matter of record.

"*It Is Therefore Hereby Jointly Resolved* as follows:

"That the said School District and the said Borough Council agree to request the said Court to enter an order directing that the lands which are the subject of the petition of the said School District and of the said Borough of Centralia be sold and conveyed by the County Commissioners of Columbia County to the said Coates Coal Company of Centralia, Pennsylvania, upon payment of the sum of Sixteen Thousand ($16,000.00) Dollars, and requesting the Court to order and decree that the said Coates Coal Company comply with the following terms and conditions:

"(1) The Coal Company is to retain title to Areas #1 and #2 as modified herein, and all other of the sub-surface underlying the Borough of Centralia shall be deeded to the Borough of Centralia and the School District of the Borough of Centralia; and further, after strip mining operations are completed by the said Coal Company in Areas #1 and #2, the said Areas are to be conveyed to the Borough of Centralia and the School District of the Borough of Centralia.

"(2) This agreement restricts the said Coal Company to conducting strip mining operations in Areas #1 and #2 in the Mammoth vein series only.

"(3) In Area #1 no excavation shall be made with-

in one hundred fifty (150) feet of the buildings on Winter Street and no excavation to be made within ninety (90) feet of the out buildings on the North side of Walnut Street from the West side of Winter Street, East to a point one hundred fifty (150) feet West of Meyers Street.

"(4) In Area #2 no excavations shall be made within one hundred fifty (150) feet of the buildings on Troutwine Street.

"(5) Except for the strip mining operations to be conducted by the said Coal Company in Areas #1 and #2 in the Mammoth vein series, no mining, surface or otherwise, shall be conducted within the boundaries of the said Borough of Centralia.

"(6) In Areas #1 and #2 the excavations are to have a one to one berm down to the rock line and a pitch of sixty-five degrees (65°) from that point to the coal, *along the restrictive lines designated in numbered paragraphs (1) and (3) above.*

"(7) Only one pit to be worked at a time. This does not prohibit the opening of the second pit when the first pit is about completed. In other words the North and South pits will not be worked simultaneously.

"(8) Coal Company shall furnish a bond in the amount of Five Thousand ($5,000.00) Dollars above that required by State Law, for the faithful performance in the filing of all excavations as hereinafter provided.

"(9) All excavations shall be filled to the present ground elevations and contour.

"(10) The Coal Company shall cover itself with adequate insurance covering public liability and property damage caused by mining, stripping, blasting, or transportation of coal or refuse. Streets are to be kept clean and street dust kept to a minimum.

"(11) Coal lands retained by the said Coal Company are to be placed on the assessment rolls for the year 1951 and succeeding years.

"(12) Areas retained by the said Coal Company are to be calculated and assessed at the same rate per acre as they were assessed in the year 1947, subject to proper depletion as fixed by the County Commissioners of Columbia County. It is agreed that the Areas to be retained by the Coal Company under the provisions of this Agreement will include only 8.46 acres.

"(13) All of the foregoing provisions shall be binding upon the Coates Coal Company, its agents, subcontractors, Lessees, sub-lessees, its successors or assigns.

"ADOPTED this 6th day of February, A. D. 1951 . . ."

Thereafter, February 20, 1951, was fixed for hearing on this matter, and the court directed that the same be readvertised, which request was duly complied with on February 14, 1951, as appears from proof of publication offered in evidence. On the date fixed for hearing all of the parties appeared before the court, at which time the Commissioners of Columbia County unanimously adopted the following:

"RESOLUTION

"Feb. 20, 1951

"On motion of Grant G. Miller seconded by George C. Welliver, the following resolution was unanimously passed:

" 'WHEREAS the offer of the Centralia School District and the Borough Council of Centralia to purchase the subsurface underlying the Borough of Centralia for the sum of $15,000.00 having been withdrawn by virtue of their joint resolution of February 6, 1951 whereby they accepted an offer of the Coates Coal Company to purchase the said subsurface for the sum of $16,000,00 and imposing certain conditions and restrictions as to reconveyance and strip mining.

" 'BE IT RESOLVED: That the terms and conditions of the Joint Resolution of the School District of the Borough of Centralia and the Borough Council of Centralia as shown in Petitioners' Exhibit #1 as modified by stipulation of counsel in the proceedings in Common Pleas of #13 May Term 1950 are acceptable to the Commissioners of Columbia County and that the said Commissioners are agreeable to an order of Court being made under and upon the conditions contained in the said Joint Resolution.' "

Also on the date of hearing counsel for the intervening coal companies made a motion to withdraw the previously filed motion to dismiss the proceedings, and this was allowed by the court.

At the hearing representatives of the respective political subdivisions testified that the proposed compromise and sale met with their approval, and requested that the court approve the same in accordance with the terms and conditions set forth and embodied in the above-quoted resolution.

The Act of May 21, 1937, as amended, above cited, grants to municipalities including counties, authority to dispose of unredeemed lands, including subsurface, purchased at tax sales, by private sale to private persons or corporations, or, in the case of subsurface, for support to political subdivisions under the Act of 1949, above cited, for a compromised portion of the delinquent unpaid taxes, subject to the approval of the court of common pleas, upon petition after hearing duly advertised.

It has been held that the county holds unredeemed lands purchased at a tax sale as trustee for the benefit of all tax levying authorities in proportion to their respective interests: Erie Appeal, 159 Pa. Superior Ct. 18. It follows, therefore, by reason of this equitable interest, the approval of a tax compromise by all interested political subdivisions is most desirable.

The Act of May 21, 1937, as last amended by the Act of May 17, 1945, P. L. 627, 72 PS §5878c, by express language authorizes an interested political subdivision (as was done in this case) to petition the court of common pleas for approval of a tax compromise and sale, as the act provides, inter alia: "Upon presentation of any such petition, by any taxing authority having an interest therein, or by the other party concerned, . . ."

The tantamount inquiry of the court in determining whether or not to decree approval of a proposed compromise and sale under the act is not limited to the actual monetary consideration involved as being just, fair and reasonable, but the court must also be satisfied that the proposed transaction is proper, beneficial and to the advantage of all of the taxing authorities interested: Imperial Cardiff Coal Company Appeal, 156 Pa. Superior Ct. 301. Likewise the court under the act is given broad latitude to change, modify and alter the proposed settlement by imposing restrictions, limitations and conditions which must be complied with before the transaction is completed, as the agreement between the parties is conditional, not absolute, and title to the property remains in the county until, as the court directs, the consideration is paid and the conveyance made: Roth Appeal, 159 Pa. Superior Ct. 145.

Section 2 of the Act of 1945 provides, inter alia, as follows:

"If, after such hearing, the court is satisfied that the proposed compromise or private sale is proper and to the advantage of all the taxing authorities interested, it shall enter a decree approving such compromise, settlement, private sale *or such other settlement as the court may find to be proper*, . . ."

In this case it would seem that the proper parties are properly before the court, that the court has jurisdiction of the parties and the subject matter, that procedural requirements of the act of assembly have been

fully complied with in all respects, that the terms, conditions, covenants, restrictions, undertakings, promises and provisions of the resolution or agreement of the tax levying authorities, admitted in evidence as petitioners' exhibit no. 1, above quoted, be made a part of the proposed settlement and be held binding and effective, and that the court is authorized under the act to give approval to "such other settlement as the court may find to be proper" even though it differs from the original plan set forth in the petition.

Now, considering the proposed compromise and sale, as changed and modified, is the price fair, is the sale proper and to the advantage of all the taxing authorities interested? We believe the answer must be in the affirmative. All of the interested parties have given their assent to the present proposed settlement, and no person or body filed or voiced any objection thereto at any time, including the day of hearing.

At first blush the consideration of $16,000 to compromise slightly over $60,000 of unpaid taxes may appear inadequate. However, this is $1,000 more than the commissioners originally agreed to accept from the Borough and School District of Centralia for the same property. The amount of coal that might be recovered and the cost of its recovery is problematical in the few acres to be stripped. The greater portion of the area was stripped previously, and the entire area has been subject to independent mine operations for years. The surface is owned by an independent organization which will demand its pound of flesh. The purchaser is deeding all of the land under the built-up section of the borough to the borough and the school district forthwith, and agrees to deed the remaining area to the borough and the school district upon the completion of its stripping operation, which accomplishes the very purpose of the original plan, and instead of being an

expense to the taxing authorities, they will receive their proportionate share (and the school tax is the bulk thereof) of the compromise of $16,000, which the purchaser agrees to pay in cash upon delivery of the deed. The restrictions in the resolution in regard to the manner of recovery of the coal and the back fill to be made adds considerable expense, thereby reducing the value of the coal in place.

The Centralia Colliery and the purchaser employed over 100 residents of Centralia Borough. Their operations have been greatly restricted, in fact closed, for the past six months for lack of coal, and these employes cannot, because of regulations and union rights, seek work elsewhere in the mining industry, so that this plan will put these employes back to work.

The home owners of the borough have been carrying the tax burden for many years, because no taxes have been paid on these coal lands since 1939. This plan will at least put some coal lands back on the tax ledger to ease the burden, in addition to creating an income for the presently unemployed home owners, who have been having difficulty in meeting their payments and keeping their homes in repair.

We could elaborate to greater extent on the foregoing considerations, and could mention some additional ones, but this opinion is already too lengthy, and we believe we have mentioned enough in sufficient detail to show that the consideration is fair, the proposed settlement is proper and to the advantage of all the taxing authorities interested, and to this end we make the following

### Decree

And now, to wit, March 26, 1951, it appearing that the proposed sale by the Columbia County Commissioners, present title holders of the property described in Columbia County Deed Book, vol. 118, p. 367, for the sum of $16,000 cash, subject to all the terms and

conditions of the resolution marked petitioners' exhibit no. 1, as modified, to the Coates Coal Company, is proper and will be to the advantage of all taxing authorities interested, such private sale is hereby approved, and it is *ordered, adjudged, directed and decreed* that the Columbia County Commissioners execute and deliver to the Coates Coal Company a deed of conveyance for all the subsurface property underlying the Borough of Centralia, now assessed in the name of the Nogard Corporation, more fully and at length described in Deed Book, vol. 118, at p. 367, *subject, however,* to all of the terms and conditions of the resolution marked petitioners' exhibit no. 1, as modified, upon the payment of the sum of $16,000 cash and all the costs of this proceeding.