**BOROUGH OF CENTRALIA, In the Commonwealth of Pennsylvania, Appellant,**

v.

**The COMMONWEALTH of Pennsylvania, the Department of Community Affairs of the Commonwealth of Pennsylvania and the Columbia County Redevelopment Authority.**

Commonwealth Court of Pennsylvania.

Argued April 6, 1995.

Decided May 1, 1995.

Reargument Denied June 19, 1995.

Richard P. McElroy, for appellant.

Robert Spielman, for appellees.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Borough of Centralia (Centralia) appeals a Columbia County Court of Common Pleas order granting the preliminary objection in the nature of a motion to dismiss filed by respondents Commonwealth of Pennsylvania (Commonwealth), the Columbia County Redevelopment Authority (CCRA) and the Department of Community Affairs (DCA). The trial court agreed with respondents that Centralia's petition for appointment of a board of view should be dismissed for failure to state a claim upon which relief can be granted. Although our rationale differs in some respects from that of the trial court, we affirm that court's order.

This case presents but one of many problems associated with the unfortunate circumstances affecting residents of Centralia, where a fire in nearby abandoned mines has existed for a long time, causing the residents considerable concern about their health, safety and livelihood.

The facts with which we are immediately concerned in this appeal are as follows. In 1983, the three respondents initiated a program to relocate Centralia residents voluntarily due to an alleged threat to health and safety from the fire in the mines. A relatively small number of residents declined to relocate. In February 1992, CCRA notified those residents that it would acquire all of the remaining occupied surface properties in Centralia under the Eminent Domain Code.[1] CCRA adopted a resolution to that effect in August 1992.

In October 1992, Centralia petitioned for appointment of a board of view under the Eminent Domain Code, asserting that the surface acquisition and relocation will be a *de facto* taking of subsurface areas it owns. CCRA and the Commonwealth filed preliminary objections. The trial court examined a 1951 resolution and a 1965 deed, the substance of each being attached to the petition. The 1951 resolution provided for subsurface areas to be purchased by Coates Coal Company, which in turn would convey all but two of those areas to Centralia and the Centralia School District. The resolution received necessary court approval in *School District of Centralia Borough,* 77 Pa. D. & C. 551 (1952). In the 1965 deed, the Centralia School District conveyed its ownership interest in the subsurface areas to Centralia.

The trial court recognized that Centralia owns the subsurface rights to the surface areas to be taken. However, relying on the 1951 resolution, the court held that Centralia never possessed or acquired the right to mine the subsurface and thus will not be so substantially deprived of its property by respondents' acquisition of surface properties to support a finding of a *de facto* taking. Therefore, the court ordered the petition dismissed. In its opinion, the court also agreed with the Commonwealth's additional objection requesting dismissal of paragraphs 17 and 18 of the petition for failure to state a cognizable claim. The court declined to decide CCRA's objection on ripeness, deeming that issue moot due to the court's disposition of the case on other grounds—i.e., Centralia's right to mine.[2]

We have considerable doubt about the correctness of the rationale that Centralia does not have the right to mine the subsurface it owns.[3] However, we need not decide the

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101—1–903.

2. Further, the court agreed with CCRA's preliminary objection pertaining to impertinent matter in paragraphs 8, 10, 14 and 15 of Centralia's petition. The court disagreed with CCRA's supplemental preliminary objection based on subject matter jurisdiction.

3. The preamble of the 1951 resolution states in part:

    Be it resolved . . .

That whereas the said School District and the said Borough Council are jointly engaged in an effort to obtain title to the sub-surface underlying the Borough of Centralia, *so that the said sub-surface shall remain intact as it is at the present time for the protection of the owners of surface properties within the Borough* limits. *School District of Centralia Borough,* 77 Pa. D. & C. at 555 (emphasis added). On the other hand, it does not appear from the ensuing operative part of the resolution or from the 1965 deed that any mining restriction has been placed on Centralia.

issue because, as explained below, Centralia's petition is not ripe for consideration and the trial court was correct in dismissing it.[4] We also do not decide the issue of Centralia's mining rights because, if we were to hold prematurely that Centralia has the right to mine, we might be affecting the rights of those citizens Centralia apparently sought to protect when it adopted the 1951 resolution. When and if this case and its related issues become ripe for decision, all rights can be determined when all parties—including, most importantly, the residents of Centralia, who are not now parties in this case—will be alleging and proving ascertainable facts rather than undetermined, speculative situations.

▮ Ripeness has been defined as the presence of an actual controversy; it requires a court to evaluate the fitness of the issues for judicial determination, as well as the hardship to the parties of withholding court consideration. *American Council of Life Insurance v. Foster*, 134 Pa.Commonwealth Ct. 634, 580 A.2d 448 (1990). We consider the case before us not to be ripe because there simply are no averments of existing facts that will establish a *de facto* taking. Indeed, in seeking a board of view, Centralia does not allege that a *de facto* taking has occurred, but alleges that respondents *"will* have effected a de facto taking" (Petition, paragraph 17) (emphasis added). It has not even averred facts which are certain to occur and will support this conjectural allegation.

As noted above, the trial court accepted the Commonwealth's additional preliminary objection seeking dismissal of paragraphs 17 and 18 of Centralia's petition for failure to state a cognizable claim. Those paragraphs state:

17. Once respondents complete the forced acquisition and relocation program which they have planned and instituted, they will have effected a de facto taking of the property owned by the Borough, including the anthracite coal reserves under the Borough. They will have accomplished this by:

(a) The imminent and involuntary acquisition by condemnation of all remaining homes, business and non-profit buildings;

(b) The forced relocation of all residents in the Borough so that no living person remains; and

(c) The resulting destruction and elimination of Borough government and effective elimination of the Borough as an entity.

18. As a consequence of this exercise of the power of eminent domain by the Commonwealth and its agents, DCA and CCRA, the Borough will be unable to effectuate any disposition of its property and, as the owner of the subsurface minerals, coals and deposits, will be deprived of the beneficial use and enjoyment of such property. Indeed, the exercise of eminent domain by respondents will result in the Borough's property escheating to the Commonwealth, which will then be the owner of the anthracite coal now owned by the Borough.

There is no doubt that these paragraphs are the basis for Centralia's petition. Centralia argues that removal of borough residents will cause removal of borough government,[5] removal of that government will mean Centralia will be unable to use and enjoy its property, and, thus, there will be a *de facto* taking.[6]

---

4. Because we agree the petition should be dismissed, we do not reach the question of whether, as the trial court stated, paragraphs 8, 10, 14 and 15 of Centralia's petition contain impertinent matter and should be stricken. Nor do we address the question of whether Centralia possessed the right to mine the subsurface under the "change of neighborhood" doctrine, whereby, as Centralia alleges, the substantial change of conditions in Centralia renders invalid any purported mining restriction.

5. Centralia submits that, under The Borough Code, Act of Feb. 1, 1966, P.L. (1965) 1656, No.

581, *as amended*, 53 P.S. §§ 45101–48501, only a borough council can dispose of property and only borough citizens may be elected to borough council; also, under the Pennsylvania Constitution, the electorate must have resided in the election district for at least sixty days.

6. The trial court stated that Centralia's mineral rights would be transferred to the township in which Centralia is located upon any annulment of Centralia's charter. *See* 53 P.S. §§ 45301–45305. Centralia contends that the court erroneously concluded Centralia will merge into a township, as no such steps have been taken or

CCRA's primary argument in response is that the petition is, at best, premature. CCRA contends the petition is premised on the speculative assumptions that all Centralia residents will leave, that Centralia itself will cease to exist and that Centralia's property will escheat to the Commonwealth or some other party.

We agree with CCRA's argument. The averments in Centralia's petition are hypothetical. No party has presently restricted Centralia's right to mine. There is no allegation that Centralia cannot *now* mine the subsurface areas it owns because surface areas will be taken and residents will be relocated. Nor can it be established at this point that Centralia will cease to exist or will be definitely prevented from mining in the future. In sum, there has been no *de facto* taking of Centralia's right to use and enjoy the subsurface. It could be said that, in a sense, there may eventually be a *de facto* taking of the borough itself, but not the rights to the subsurface. Apart from the plain circumstance that governmental activity has not affected the immediate use of the property, any threatened loss of the property is conjectural. *See Gaughen v. Commonwealth of Pennsylvania, Department of Transportation,* 123 Pa.Commonwealth Ct. 550, 560–561, 554 A.2d 1008, 1013 (1989) and cases cited therein.

Moreover, even assuming that Centralia subsequently ceases to exist or no longer holds the property right, it is by no means clear that the benefits from the use and enjoyment of this public property right the borough now holds will be diminished under new ownership or will not continue to inure to those borough residents who may currently benefit. We note that there is no dispute here that Centralia Borough itself can cease to exist. Therefore, it is difficult to understand why compensation is necessary if the property right *of Centralia Borough* ceases to exist and, instead, becomes the property right of some other public entity such as a township, for example. Although most eminent domain cases involve takings of private property, which follows intuitively from the

concept of takings and accords with the language in the Constitutions of the United States and of Pennsylvania, we do not suggest that the Commonwealth can never be financially obligated to a public condemnee for property taken. *See City of Chester v. Commonwealth of Pennsylvania, Department of Transportation,* 495 Pa. 382, 434 A.2d 695 (1981). Nevertheless, it would certainly be premature to decide here whether compensation will be necessary if the property right in question no longer belongs in name to Centralia Borough.

■ A *de facto* taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his or her property. *Conroy–Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974). The trial court correctly stated that preliminary objections to a petition for appointment of a board of view must be sustained and the petition dismissed if the averments in the petition, taken as true, are not sufficient to state a cause of action for a *de facto* taking. *Friedman v. Philadelphia,* 94 Pa.Commonwealth Ct. 572, 503 A.2d 1110 (1986). The court also accurately stated that a property owner must show exceptional circumstances of substantial deprivation whereby the entity clothed with the power of eminent domain has exercised its power and caused damages to the owner which are the immediate, necessary and unavoidable consequences of that exercise. *Appeal of D.R.E. Land Developing, Inc.,* 149 Pa.Commonwealth Ct. 290, 294, 613 A.2d 96, 98 (1992). Given this burden and the hypothetical nature of Centralia's petition, we agree with the trial court in that Centralia's petition at this point certainly does not sufficiently state a cause of action for a *de facto* taking.

Accordingly, the trial court's order granting respondents' preliminary objection and dismissing Centralia's petition is affirmed on the grounds set forth in this opinion.

are indicated. Centralia also submits that it will still suffer a taking even if such a merger were to take place.

844

## ORDER

AND NOW, this 1st day of May, 1995, the order of the Court of Common Pleas of Columbia County, No. 1394 of 1992, dated November 30, 1993, is hereby affirmed on the grounds set forth in the foregoing opinion.