# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franconi Enterprises, Inc.,  :
                             :
                   Appellant :
                             :
            v.               : No. 167 C.D. 2019
                             : Argued: December 10, 2019
Kingston Borough             :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 9, 2020


Franconi Enterprises, Inc. (Franconi) appeals a final order of the Court of Common Pleas of Luzerne County (trial court) dismissing Kingston Borough's (Borough) preliminary objections (POs), but also concluding that Franconi did not sustain its burden of proving a *de facto* condemnation and denying Franconi's petition requesting the appointment of a board of viewers to assess damages (Petition).  Franconi contends that the trial court erred in determining that a *de facto* taking did not occur and by refusing to refer this matter to the board of viewers for a determination of just compensation.  Discerning no error, we affirm.


## I. Background

From 1936 until December 2015, Franconi owned and operated a family business at 548 Market Street, Kingston, Pennsylvania.  Franconi owns seven parcels of real property that abut Market Street, South Landon Avenue and Carle

Street in the Borough. Franconi's main business operation was housed on the improved Parcels 1 and 2. Over the years, Franconi acquired Parcels 3 through 7. The parcels subject to this litigation are Parcels 1 through 5 (Property). A portion of the Property contains a vacant lot used for parking and an unnamed alley.

On October 2, 2018, Franconi filed a Petition against the Borough with the trial court under Section 502 of the Eminent Domain Code (Code), 26 Pa. C.S. §502, seeking an appointment of a board of viewers to assess damages for an alleged *de facto* taking of its Property. According to the Petition, the Borough claimed the right to use a portion of the Property as a public road, which ultimately connects Carle Street to an unnamed alley and out to South Landon Avenue.[1] Carle Street is a dead-end street that stops at the Property and does not extend to South Landon Avenue. The Borough never formally condemned the Property for public use, but merely asserted the right to use the Property as a road under an asserted prescriptive easement[2] over Franconi's continuous objections.

Franconi alleged that the date of the *de facto* taking was August 18, 2016. On that day, Franconi installed concrete parking blocks to prevent unauthorized traffic from traversing the Property. The same day, the Borough, through the mayor and its administrators, directed the Borough police and workers to remove the concrete blocks.

Franconi further alleged that, in November 2016, it filed zoning and building permit applications with the Borough to install a four-foot fence, approximately 125 feet long, to prevent the public from attempting to drive across

---

[1] *See* Reproduced Record (R.R.) at 361a (map).

[2] A prescriptive easement is a right to use another's property. To establish an easement by prescription to use a roadway, a party must prove an open, notorious, continuous, uninterrupted, adverse, and hostile use for twenty-one years. *Keefer v. Jones*, 359 A.2d 735, 736-37 (Pa. 1976).

2

its Property to reach South Landon Avenue from Carle Street. Although the Borough accepted payment and issued permits, Borough officials refused to allow Franconi to block the Property. At a public meeting in January 2017, the then-mayor informed Franconi that he was rescinding the fence permits under his authority under the Borough's Home Rule Charter. He warned that the Property was not to be blocked because an easement existed over the Property based on the passage of time. The Borough never refunded Franconi money he paid for the permits, nor issued any formal, written notice denying the permits.

After August 18, 2016, the Borough plowed certain areas of the Property regarded as a road, patched potholes, and ensured public use of the road. Meanwhile, Franconi continued to set up road blocks, which the Borough immediately removed, without Franconi's authorization or approval.

Franconi contends that the Borough's actions are tantamount to a *de facto* taking of its Property without just compensation. Franconi claims that it has suffered damages as a result of the Borough's actions. Namely, Franconi has been unable to sell the Property, unable to list it for sale because of the existence of an illegal road, which created a title defect, and unable to protect itself from liability for people illegally crossing its Property. In addition, it claims that the location of the road has prevented immediate access to the loading docks and access points of the Property's buildings. Franconi requested an order confirming that a taking has occurred as of August 18, 2016; the appointment of a board of viewers to determine just compensation for the taking; an award of attorney fees and other fees recoverable under the Code; and, other relief deemed appropriate and/or permitted under the Code.

3

In response to Franconi's Petition, the Borough filed POs pursuant to Section 504(d) of the Code, 26 Pa. C.S. §504(d). Specifically, the Borough objected on three grounds: (1) limitation of actions; (2) laches; and (3) a prescriptive easement gave the Borough the right to take and continue using the Property.[3]

The parties filed responsive and amended pleadings and supporting briefs. A two-day trial ensued. At trial, Robert Powell, Franconi's majority shareholder, testified over the Borough's continuing hearsay objections that he witnessed a private agreement made between his father-in-law and former principal of Franconi, Aldo Franconi, Sr., and former Borough Mayor Frank "Bunky" Sorochak (both of whom are now deceased) in the summer of 1992 that allowed the Borough to traverse the Property in exchange for maintenance services. R.R. at 308a-09a. The agreement was never reduced to writing, placed before Borough Council for approval, or made known to the current Borough administration. *Id.* Franconi did not disclose the alleged existence of this agreement to the Borough until the eve of the trial.

The Borough offered the testimony of Attorney Rose Randazzo. Randazzo testified that she and her business partner were interested in purchasing the Property. She offered into evidence a draft agreement of sale from 2017 for a purchase price of $1.2 million. She testified that the offer was for "as-is" condition. She assumed that an easement existed on the Property to access Carle Street, and was not told otherwise. She viewed the roadway easement as a selling point, and she enhanced her offer because of it. However, her offer was not accepted and an agreement was never reached between the parties. R.R. at 250a-52a.

---

[3] POs "are the exclusive method under the Code of raising objections to a petition for the appointment of a board of viewers alleging a *de facto* taking." *Genter v. Blair County Convention and Sports Facilities Authority*, 805 A.2d 51, 54 n.6 (Pa. Cmwlth. 2002).

In addition, the Borough offered the testimony of Ronald Krakosky, an employee of Community Motors, which was located next to the Property, from 1980 to 1992. Krakosky testified that he would cross the Property during work approximately two to four times per day. R.R. at 254a-56a. The Borough also presented testimony of employees of the police, fire and medical services who testified that they used the Property as a roadway for years.

The parties then submitted proposed findings of fact and conclusions of law. Ultimately, the trial court overruled each of the Borough's POs. The trial court found that Franconi gave the Borough permission to use the Property, which negated the elements for prescriptive easement. However, the trial court also ruled that a *de facto* taking did not occur and denied Franconi's request for an appointment of a board of viewers. The trial court noted that the Borough may be liable for "trespass, encroachment, and conversion," which was not before the court. Trial Court Opinion, 1/29/19, at 11. Franconi's appeal to this Court followed.[4]

## II. Issues

Franconi asserts the trial court erred or abused its discretion by denying Franconi's petition under the Eminent Domain Code (Code)[5] upon concluding that there was no *de facto* taking. Franconi contends it met the requirements for a *de facto* taking. First, as found by the trial court, there was a "trespass, encroachment, and conversion" of the Property at the direction of the Borough. The Borough's

---

[4] "In eminent domain cases, this Court reviews whether the trial court committed an abuse of discretion or an error of law. When an appeal presents a question of law . . . our scope of review is plenary." *In re Condemnation by the Commonwealth, Department of Transportation*, 137 A.3d 666, 669 n.2 (Pa. Cmwlth. 2016) (*State Route 1032*) (quoting *In re PPL Electric Utilities Corporation of Real Estate Situate in Schuylkill County*, 68 A.3d 15, 18 n.5 (Pa. Cmwlth. 2013)).

[5] 26 Pa. C.S. §§101-1106.

actions were clearly intentional and not negligent or through a third party. The totality of the Borough's actions rise to the level of exceptional circumstances, justifying a finding that a *de facto* taking occurred. Further, Franconi claims it has sustained damages that were the immediate, necessary and unavoidable consequences of the Borough's exercise of eminent domain power. The Borough's actions allowed the public to traverse Franconi's Property, which opened Franconi to liability. Franconi also claims that the right-of-way created a title defect and hampered its ability to sell the Property. Thus, Franconi seeks reversal and an appointment of a board of viewers on the valuation of damages.

### III. Discussion

The issue before this Court is purely a legal one as to the proper procedure for obtaining a remedy. *In re Condemnation by the Commonwealth, Department of Transportation*, 137 A.3d 666, 670 (Pa. Cmwlth. 2016) (*State Route 1032*). In order for a landowner to seek damages under the Code, the damages must be the result of a taking or condemnation, not a trespass. *Id.*

"In determining whether a particular action is an exercise of eminent domain or trespass, we must focus upon the nature of the acts complained of" as well as "the nature of the damages, and whether they constitute a *de facto* taking or are reparable." *State Route 1032*, 137 A.3d at 670 (internal quotations and citations omitted). "[I]f the damage . . . flows . . . from some tortious act, the injured party must proceed in trespass." *Id.* (quoting *City of Pittsburgh v. Gold*, 390 A.2d 1373, 1376 (Pa. Cmwlth. 1978)). However, where the damages amount to a *de facto* taking that deprives a landowner of the use or access to his property, a landowner's exclusive remedy lies in eminent domain. *Id.*

6

Section 502(c) of the Eminent Domain Code, 26 Pa. C.S. §502(c), allows a property owner to petition for viewers to secure damages where a compensable injury has been sustained as a result of a condemnation by a condemnor that has not filed a declaration of taking. A *de facto* taking or condemnation occurs when an entity "clothed with the power [of eminent domain] substantially deprives an owner of the use and enjoyment of his property." *People United to Save Homes v. Department of Environmental Protection*, 789 A.2d 319, 326 (Pa. Cmwlth. 2001). A *de facto* taking "is not a physical seizure of property; it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property." *In re Condemnation by the Borough of Blakely*, 25 A.3d 458, 465 (Pa. Cmwlth. 2011).

A party alleging a *de facto* taking bears a heavy burden and must allege and prove: 1) the alleged condemnor has the power to condemn the property; 2) there are exceptional circumstances that have substantially deprived the owner of the beneficial use and enjoyment of his property; and 3) the damage to the property interest was the immediate, necessary, and unavoidable consequence of the exercise of the power to condemn, as opposed to some action in the nature of a tort. *Blakely*, 25 A.3d at 463. Indeed, "[b]efore there can be a *de facto* taking, there must be substantial deprivation of the beneficial use and enjoyment of property." *Espy v. Butler Area Sewer Authority*, 437 A.2d 1269, 1271 (Pa. Cmwlth. 1981). "[T]he landowner must establish that the deprivation was the direct and necessary consequence of the entity's action." *Enon Valley Telephone Company v. Market*, 493 A.2d 800, 802 (Pa. Cmwlth. 1985).

A trespass, on the other hand, occurs "where a landowner suffers specific damage to his property as a result of the negligent acts of a party with the

7

power of eminent domain." *Poole v. Township of District*, 843 A.2d 422, 424 (Pa. Cmwlth. 2004); *accord State Route 1032*, 137 A.3d at 670. "[W]here negligence is alleged, a complaint in trespass is proper." *State Route 1032*, 137 A.3d at 670.

For example, in *Enon Valley*, the landowners filed a petition for appointment of viewers alleging that the telephone company abandoned an underground telephone cable and placed telephone poles and aerial telephone lines on the landowner's property without an easement. 493 A.2d at 801. The board of viewers found that the telephone company had damaged the landowners' property and awarded damages. *Id.* On appeal, the trial court affirmed. *Id.* On further appeal, this Court determined that the acts of abandoning an underground cable and placing telephone poles and aerial lines without an easement constituted a trespass and not a *de facto* condemnation. The telephone company operated under the mistaken belief that it had received a right-of-way. *Id.* at 802. The acts were not the necessary and unavoidable result of eminent domain power, but rather, the result of the telephone company's negligence. *Id.* Consequently, we concluded that no condemnation occurred and that the proper action lies in trespass, not eminent domain. *Id.* at 802-03.

"Whether a particular activity deprives a property owner of the beneficial use and enjoyment of his property is . . . dependent upon the type of use the owner has given to the property." *Department of Transportation v. Kemp*, 515 A.2d 68, 72 (Pa. Cmwlth. 1986), *aff'd sub nom. Department of Transportation v. Smoluk*, 535 A.2d 1051 (Pa. 1988). In cases involving commercial properties, the loss of value and the inability to rent or sell the property are obviously relevant in determining whether the property is no longer income-producing and thus whether

8

it has lost its commercial use. *McCracken v. City of Philadelphia*, 451 A.2d 1046 (Pa. Cmwlth. 1982).

We also consider the degree of damages. *State Route 1032*, 137 A.3d at 671. "For instance, we consider whether the damage rises to the level of a *de facto* taking of property. We also assess whether the damage is of a permanent nature and whether the damage could have been prevented by due care." *Id.* (Citations omitted). "Without question, the depreciation and the lack of marketability are compensable injuries to the property which may be recovered as damages resulting from" a taking. *Kemp*, 515 A.2d at 73.

Damages recoverable in an eminent domain proceeding are set forth in Chapter 7 of the Code. Section 702(a) of the Code describes "just compensation" as: "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa. C.S. §702(a).

Applying these factors to the allegations here, we agree with the trial court that the Borough's actions are not in the nature of a taking by eminent domain. Although the Borough has the power to condemn and take the Property, it did not actually engage in a formal condemnation proceeding. As for whether the Borough's actions amounted to a *de facto* taking, Franconi did not meet its burden of proof.

First, Franconi failed to establish that the alleged deprivation was the direct and necessary consequence of the Borough's exercise of eminent domain. Here, as in *Enon Valley*, the Borough acted under the mistaken belief it had a right-

9

of-way by a prescriptive easement to use the Property. Such negligence cannot form the basis of an eminent domain action. *Enon Valley.*

Moreover, Franconi did not show how the continued use of the Property as a roadway substantially deprived it of the beneficial use and enjoyment of its Property. The Borough's actions enabled the Borough and the public to continue to use a portion of the Property as a right-of-way. The Borough's actions did not prevent Franconi from accessing or using the Property, but merely interfered with Franconi's recent desire to keep others from using the Property as a roadway.

Franconi's claims that the Borough's actions of forcing a roadway through the Property has negatively affected the use of the Property is belied by Powell's testimony that the Property has existed with a permissive roadway easement since 1992. R.R. at 308a. In addition to the private agreement with the Borough, Franconi gave permission to others, including Community Motors employees, to use the Property for ingress and egress. *See* R.R. at 256a, 279a. As the trial court noted, "[t]here is no definitive way of measuring or distinguishing the use of the municipality, ambulance, police cruiser, fire truck, [Department of Public Works] trucks and those other interests such as Community Motors employees who were given permission to use the same areas for ingress and egress." Trial Court Opinion, at 10.

Second, Franconi did not prove that the alleged damages sustained were the consequence of eminent domain. At the time of the alleged "taking," Franconi was no longer conducting business operations at the Property. The Borough's use of the Property did not affect Franconi's business operations.

Insofar as Franconi claims that the Borough's actions created title issues impacting the sale of the Property and diminished the Property's value, the

10

trial court found that the Borough's actions did not interfere with the sale of the Property or diminish the purchase price. According to Randazzo's testimony, the sale fell through because there was never a meeting of the minds as to the purchase price nor an executed real property sales agreement, and not because the Borough interfered with the sale. *See* R.R. at 251a. Randazzo testified that the Borough wanted her to purchase and develop the Property and was willing to work with her. R.R. at 252a. When asked about the easement, Randazzo assumed that that portion of Property was part of Carle Street, which she viewed as a "good thing" that enhanced her offer. R.R. at 251a. "[W]hen you sell commercial real estate, you want as many entrances and exits to the property as possible." R.R. at 251a. The offer made was in "as is, where as condition." R.R. at 251a.

Franconi also claims that it was harmed because it was unable to protect itself from liability for people illegally crossing the Property. However, Franconi provided no evidence that it actually sustained any liability in this regard. Although there is no dispute that the Borough removed Franconi's physical barriers and did not refund money for the revoked fence permits, these damages are not the immediate, necessary, and unavoidable consequence of the exercise of the power to condemn. As the trial court found, the Borough's actions constituted a "trespass, encroachment, and conversion." Trial Court Opinion, at 11. In short, Franconi failed to prove a degree of damage that could be construed as rising to the level of a *de facto* taking.

## IV. Conclusion

Upon review, any injury that Franconi sustained was not the necessary and unavoidable result of the Borough's power of eminent domain but, rather, was

11

the result of the Borough's negligence.  *See Enon Valley*.  Although the Borough possessed the power to condemn the Property, Franconi failed to prove substantial deprivation or damages.  *See Blakely*, 25 A.3d at 463.  For these reasons, the trial court properly determined that there was no taking.

Accordingly, we affirm the trial court's order.


_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franconi Enterprises, Inc.,      :
     :
            Appellant     :
     :
         v.          : No. 167 C.D. 2019
     :
Kingston Borough      :

## O R D E R

AND NOW, this 9<u>th</u> day of <u>March</u>, 2020, the order of the Court of Common Pleas of Luzerne County, dated January 29, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge