William C. ROWLAND, Jr., Appellant,

v.

COMMONWEALTH of Pennsylvania Department of General Services For The State Armory Board, Department of Military and Veterans Affairs.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 4, 2003.

Decided April 9, 2003.

Harry F. Dunn, Jr., Media, for appellant.

Elizabeth A. O'Reilly, Harrisburg, for appellee.

Before COLINS, President Judge, LEADBETTER, J., and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

William C. Rowland, Jr. appeals from an order of the Court of Common Pleas of Delaware County, which, *inter alia*, sustained preliminary objections filed by the Commonwealth of Pennsylvania, Department of General Services (DGS) to his Petition for the Appointment of a Jury of View. Common pleas sustained the preliminary objections because it found that Rowland failed to establish that the actions of DGS amounted to a *de facto* taking of his property.

The property at issue, 700 W. Baltimore Pike, Media, PA, is located in Upper Prov-

idence Township. It is over one acre in size and was listed for sale after the retail operation contained in one of its buildings closed in 1999. According to Rowland, representatives of the Commonwealth of Pennsylvania, Department of Military and Veterans Affairs (DMVA) met with his realtor several times and showed great interest in the site as a place to relocate the Media Armory. However, on April 6, 2000, Rowland and RCN Telecom Services of Philadelphia, Inc. (RCN) entered into an agreement of sale for the property, for consideration in the amount of $725,000. Rowland complied with all of the conditions listed in the agreement of sale; RCN completed its due diligence, but, prior to any settlement, a RCN representative was informed that the property was proposed for condemnation. After Rowland and RCN confirmed that a provision existed in Act 27 of 2000, the year 2000 Capital Budget Debt Authorization and Project Itemization Act (Capital Budget Act), for acquiring and renovating the site, RCN terminated the agreement of sale. The proposed relocation of the Media Armory received substantial news coverage and it appeared to Rowland that his property was going to be acquired or condemned by the Commonwealth. Nevertheless, in October of 2000, Rowland learned that the DMVA no longer wanted his property because of a change in federal regulations for armories, which change rendered the Baltimore Pike site unfit. After Rowland confirmed that the DMVA had no interest in his property, he attempted to revive the agreement of sale with RCN, but to no avail.

On March 15, 2001, Rowland filed his Petition for the Appointment of a Jury of View, alleging a *de facto* taking of his property by DGS on or about April 7, 2000 when, "pursuant to Act 27 of 2000, funds were provided for the acquisition of condemnee's property for the purpose of relocating the Media Armory." (Pet., para. 2). On March 19, 2001, before preliminary objections were even filed, common pleas granted Rowland's petition and appointed a Board of View. DGS thereafter filed preliminary objections, including additional objections to the petition for a Board of View, which Rowland then answered. On December 7, 2001, common pleas ordered the Board of View stayed from performing its duties until further court order. An evidentiary hearing was held on April 9, 2002, and, by order dated June 4, 2002, common pleas sustained DGS's preliminary objections, vacated the March 19, 2001 order appointing a Board of View, and dismissed Rowland's Petition for the Appointment of a Jury of View. The property was eventually sold in September of 2002 for $600,000.

On appeal, Rowland now argues that common pleas erred in determining: (1) that DMVA, acting on the Commonwealth's behalf, did not have the "apparent authority" to condemn his property; and (2) that the Commonwealth's actions, exercised through DMVA, did not effect a *de facto* taking of his property.[1] Rowland contends that the Commonwealth's actions cost him two and one-half years of carrying charges for mortgages, taxes, and insurance, among other things, and also cost him a legitimate sales price.

In support of his first assertion, Rowland states that the Director of DMVA came to the site, had telephone conversations with Rowland's realtor, who then faxed him information concerning the site, and was present when the realtor was told

---

**1.** Our review of common pleas's ruling on preliminary objections to a petition for the appointment of viewers is limited in this case to whether an error of law has been committed. *See Domiano v. Dep't of Env'l Res.*, 713 A.2d 713 (Pa.Cmwlth.1998).

that the property could be condemned. He also states that DMVA prepared plans to renovate the site, received estimates to remodel the property, and had a line item added to the Capital Budget Act to acquire and renovate the property. Rowland's argument that DMVA had apparent authority to condemn his property is nonetheless without merit.[2]

■ In order to proceed under Section 502(e) of the Eminent Domain Code, Act of June 22, 1964, P.L. 84, *as amended,* 26 P.S. § 1–502(e), "a de facto taking must result from a governmental body's *actual* exercise of the power of eminent domain; it cannot result from the actions of the condemning entity's agents or independent contractors." *Darlington v. County of Chester,* 147 Pa.Cmwlth. 177, 607 A.2d 315, 320 (1992). (Emphasis added). However, Rowland cites the text of Restatement (Second) of Agency, § 27 to support his assertion that the actions of DMVA representatives led to the conclusion that condemnation of his property was inevitable and that those representatives had authority to bind the Commonwealth in a con-

demnation action.[3] Even assuming that the doctrine of apparent authority applies,[4] our case law has explained:

Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. *Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power. Jennings v. Pitts. Mercantile Co.,* 414 Pa. 641, 202 A.2d 51 (1964); Restatement 2d, Agency, §§ 8, 27 (1958).

*Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 375, 246 A.2d 407, 410 (1968). (Emphasis added). Simply put, on this record, there is no indication that the Commonwealth, as principal for DMVA, ever knowingly allowed DMVA to bind it in a condemnation action or held DMVA out as possessing such power. Therefore, it was not reasonable for Rowland and RCN to believe that DMVA had this authority.[5]

---

2. We note that, although Rowland alleges in his Petition for the Appointment of a Jury of View that DGS engaged in a *de facto* taking of his property, he argues in his brief that DMVA, with the Commonwealth as its principal, was the agency that actually brought about the *de facto* taking of his property.

3. This section provides:
   § 27. Creation of Apparent Authority: General Rule
   Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

4. This doctrine is usually relevant in the area of business transactions. *Juarbe v. City of Philadelphia,* 288 Pa.Super. 330, 431 A.2d 1073, 1079–1080 (1981).

5. Accordingly, Rowland's assertion in his brief that the line item in the Capital Budget Act for acquisition and renovation of his property by DMVA either showed an attempt to condemn or amounted to a condemnation is of no moment. As well, record evidence presented by DGS reflects that inclusion of a line item in the capital budget does not dictate that the funds for such project will automatically be released, and Rowland has not adduced any evidence contravening this fact. As common pleas stated, "[t]he Court properly found that a line item creates no substantive rights, no property rights, and does not compel the executive branch to release funding for each line item." Common pleas op. at 7.

Section 502(e) allows for the filing of a petition for the appointment of viewers where a compensable injury has been suffered but no declaration of taking has been filed. As this court explained in *Lehigh Northampton Airport Authority v. WBF Associates, L.P.*, 728 A.2d 981, 985 (Pa. Cmwlth.1999):

A de facto taking under section 502(e) of the Code occurs *when an entity clothed with the power of eminent domain* substantially deprives an owner of the use and enjoyment of his or her property.... Where a de facto taking is alleged, property owners bear a heavy burden of proof and must show that exceptional circumstances exist which substantially deprive them of the use of their property and, further, that such deprivation is the direct and necessary consequence of the actions *of the entity having the power of eminent domain.*

(Emphasis added) (Citation omitted).

For Rowland, herein lies the rub. Apparently, there is no dispute between the parties that neither the State Armory Board nor DMVA is cloaked with the power of eminent domain. In this vein, neither Section 701 of the Military Code, 51 Pa.C.S. § 701 (concerning "Overall powers of department"), Section 702 of the Military Code, 51 Pa.C.S. § 702 (concerning "Duties of department"), nor Section 902 of the Military Code, 51 Pa.C.S. § 902 (concerning "General powers and duties of Adjutant General") give DMVA the power to condemn property. Further, Section

1501 of the Military Code, 51 Pa.C.S. § 1501 (concerning "Compositions and general functions") does not give the State Armory Board the power of eminent domain.[6] Consequently, any allegation by Rowland in his brief that either the State Armory Board or DMVA effected a *de facto* taking of his property necessarily fails. *See Environmental Indus., Inc. v. Casey*, 675 A.2d 392 (Pa.Cmwlth.1996), which states that, if an alleged condemnor does not have the power of eminent domain, "no cause of action for a de facto taking can stand." *Id.* at 395.

Further, although Rowland alleged in his Petition for the Appointment of a Jury of View that it was *DGS* that effected the taking of his property,[7] he now states:

A property owner isn't going to differentiate between various departments of the Commonwealth. That owner is going to think and rightly so, that he or she is dealing with a single entity, the Commonwealth of Pennsylvania.

The Commonwealth's defense to [Rowland's] claim is to say, well, the Department of General Services never had anything to do with this, so tough luck. That isn't fair. *Just because the Department of General Services was not in the discussions doesn't mean that the Commonwealth wasn't in the discussions.*

Rowland's brief at 15. Accordingly, Rowland has seemingly abandoned any assertion that DGS effected a *de facto* taking of his property; therefore, common pleas

---

**6.** We do note, however, that Section 1505 of the Military Code, 51 Pa.C.S. § 1505 (concerning "Donation of land by political subdivisions"), provides: "It shall be lawful for any county, city, borough, town or township to acquire by purchase or by gift, or by the right of eminent domain, any land for the use of the Pennsylvania National Guard, and to convey such lands so acquired to the Commonwealth of Pennsylvania."

**7.** Section 2401.1(4) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 631.1(4), authorizes DGS to acquire land in the name of the Commonwealth through, *inter alia*, the power of eminent domain. Section 2401.1 was added by the Act of July 22, 1975, P.L. 75.

properly sustained the preliminary objections of DGS in this matter.

The order of common pleas is hereby affirmed.

### *ORDER*

AND NOW, this 9th day of April, 2003, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby AFFIRMED.