**ESTATE OF J. Blair BLOSE, through its executor, Barry Lynn BLOSE, Appellants**

v.

**BOROUGH OF PUNXSUTAWNEY, John Hallman, Richard Alexander, Ronald E. Voris, James R. Infintino, Donna J. Lellock, Francis J. Molinaro, William H. Spencer and James Stello.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.

Decided Dec. 21, 2005.

---

9. Accordingly, we need not address Gallman's issues on the merits of the case.

**654**

Lawrence P. Lutz, Butler, for appellant.

Timothy P. Morris, Punxsutawney, for appellees.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The Estate of J. Blair Blose, through its Executor, Barry Lynn Blose (Appellant) appeals from a decision of the Court of Common Pleas of Jefferson County (trial court) which denied all claims asserted by him in a Civil Complaint he filed against the Borough of Punxsutawney, et al. (Appellees) after Appellees demolished his building on April 1, 1999. We affirm.

■ Appellant, the owner of The Old Jefferson Theatre building which was located in the Borough of Punxsutawney, filed a Civil Complaint (Complaint) alleging that, on or before March 31, 1999, Appellees made a decision to demolish the building and did not properly notify him before proceeding with the demolition. In doing so, Appellant alleged that Appellees violated his due process rights and thus violated 42 U.S.C. § 1983.[1] A non-jury trial was held before the trial court on December 15 and 16, 2003. On December 30, 2004, the trial court issued a decision wherein it found, in relevant part, that:

13. On March 31, 1999, Blair Blose was in California or Canada on a trip with one of his sons ...

14. On March 31, 1999, Defendant Alexander, then President of the Punxsutawney Borough Council, gathered several other council members in the alley near the old Jefferson Theatre building for the purpose of holding an emergency council meeting.[2]

---

1. Section 1983 provides that:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

   42 U.S.C. § 1983.

2. Apparently, there is no official record of this meeting. Council member Ronald E. Voris testified that the decision to tear down the building was not made at a regular council meeting and he could not recall if this deci-

15. At the aforesaid meeting, the council members decided to demolish the Jefferson Theatre building.

16. At the March 31st emergency meeting, the defendants decided to take official action to demolish the Jefferson Theatre building and specifically determined that they would attempt to notify Mr. Blose by sending notices to his son and daughter.

17. Council sent formal notices to Richard Blose (Blair's son) and Darlene Shaffer (Blair's daughter) by certified mail that were presented into evidence. Punxsutawney Borough did not send any notice to Blair Bose, even though the Secretary and various council members were aware of his address. Blair Bose had previously received certified letters from the Borough at his address at 2020 Lane Avenue, Punxsutawney, Pennsylvania. No notice was posted upon the building. The only notice sent, the ones to Richard Blose and Darlene Shaffer, contained no explanation of any rights regarding a hearing, objections, methods of curing problems, or methods of appealing the council's determination.

18. No one from Punxsutawney Borough notified Lawrence P. Lutz, the attorney for whom Punxsutawney Borough knew was representing Blair Blose. Nevertheless, Attorney Lutz became aware of the notices through Richard Blose and Darlene Shaffer and, on April 1, 1999, sent a letter by fax to the Solicitor of Punxsutawney Borough indicating that his client was not available and objected to the demolition of the building.

19. J. Blair Blose had previously contracted with John Lingenfelter to begin removal of various parts of the building. Mr. Lingenfelter had proceeded to remove the roof and trusses from the building's second floor, and discontinued his work some time in the summer or fall of 1998. No additional removal or demolition work was done on the building from the time Mr. Lingenfelter discontinued his operations until the time the Borough of Punxsutawney began demolition work.

(Trial Court opinion, pp. 3–4). The trial court also made numerous Findings of Fact regarding the deterioration of the building based on the testimony of numerous witnesses. In general, witnesses testified that the walls were leaning and bricks were falling from the building. The trial court found that, because of these conditions, "Council was very worried that bricks would fall from the wall onto pedestrians or vehicular traffic to the point where they used wooden horses and cones and police evidence tape to block off the alley." (Finding of Fact No. 28). The trial court further found that:

37. Several individuals called by the Borough of Punxsutawney indicated that their foremost concern was the issue of "public safety." All of these witnesses were credible that this Theatre building, especially one torn down to the skeleton with bricks freely standing, posed a grave threat and hazardous condition to the safety of the public of Punxsutawney, Pennsylvania. The Council's fears of a wall falling or of bricks falling off of

sion was ever formalized at a later meeting. (N.R. 12/16/2003; R.R. at 173b–174b). In addition, Susan Maczko, who was employed as Borough Manager at the time of the meeting, testified that there were no minutes prepared for this meeting. (N.T. 12/15/2003, p. 103; R.R. at 125b). When asked whether this action was ever ratified at a subsequent council meeting, Ms. Maczko replied: "No. It was discussed, brought up to council, but I cannot remember if a motion was made." *Id.* The validity of the meeting and whether or not the action taken was official have not been raised on appeal as issues in this case.

the vacant walls were certainly well founded and reasonable for any individual to have; especially when examining the pictures and other evidence provided by the plaintiff.

38. The fears of public safety were further reinforced by the fact that the demolition permit to tear the Theatre down was obtained in August 1997 and shortly thereafter the roof and supporting structures were removed from the building and then the walls remained for approximately nineteen months with no action being taken by the plaintiff and the structure continually degrading even more. This further confirms the danger to public safety.

Accordingly, the trial court concluded that the Old Jefferson Theatre was a public nuisance and that, pursuant to the Punxsutawney Borough Code and Section 1202 of the Borough Code,[3] the Borough acted appropriately by invoking its emergency powers to demolish the building. The trial court further concluded that, under the Borough ordinance, no notice is required prior to implementing the emergency provision of Section 94–8. Accordingly, the trial court denied all of Appellant's claims and entered judgment against Appellant and for Appellees in the amount of $20,790.00, which was the cost the Borough incurred to demolish the building. Appellant filed a Motion for Post–Trial Relief. In that Motion, Appellant argued that the trial court erred in concluding that emergency action by the Borough was necessary and that the Borough was not required to notify him before demolishing the building. By order dated February 17, 2005, the trial court denied Appellant's Motion for Post–Trial Relief. Appellant's

appeal of that order to this Court followed.[4]

On appeal, Appellant argues that he was not provided with proper notice that the Borough was going to demolish his building, that he was denied an opportunity to be heard prior to the taking of his property by the Borough and that the Borough took his property without due process of law.

Section 1202(5) of the Borough Code provides that:

> The powers of the borough shall be vested in the corporate authorities. Among the specific powers of the borough shall be the following, and in the exercise of any of such powers involving the enactment of any ordinance or the making of any regulation, restriction or prohibition, the borough may provide for the enforcement thereof and may prescribe penalties for the violation thereof or for the failure to conform thereto:
>
> . . .
>
> **(5) Nuisances and dangerous structures.** To prohibit and remove any nuisance, including but not limited to accumulations of garbage and rubbish and the storage of abandoned or junked automobiles and to prohibit and remove any dangerous structure on public or private grounds, or to require the removal of any such nuisance or dangerous structure by the owner or occupier of such grounds, in default of which the borough may cause the same to be done, and collect the cost thereof, together with a penalty of ten per cent of such cost, in the manner provided by law for the collection of municipal claims, or by

---

3. Act of Feb. 1, 1966, P.L. (1965), 53 P.S. § 46202.

4. Our scope of review of a trial court's decision denying a motion for post-trial relief is

limited to determining whether the trial court abused its discretion or committed an error of law. *Kramer v. Port Authority of Allegheny County*, 876 A.2d 487, 493 (Pa.Cmwlth.2005).

action of assumpsit, or may seek relief by bill in equity.

53 P.S. § 46202. Chapter 94 (Buildings, Unsafe) of the Punxsutawney Borough Code provides, in relevant part, that:

### § 94–8. Emergency action.

In cases where it reasonably appears that there is immediate danger to life or safety of any person unless a dangerous building, as defined herein, is immediately repaired, vacated or demolished, the Building Inspector or assistants specially designated thereto shall report such facts to the Borough Council, and the Borough Council shall cause the immediate repair, vacation or demolition of such dangerous building. The cost of such emergency repair, vacation or demolition of such dangerous building shall be collected in the same manner as provided in § 94–5E hereof.

### § 94–9. Service of notice.

In cases, *except emergency cases,* where the owner, occupant, lessee or mortgagee is absent from the city, all notices or orders provided for herein shall be sent by certified mail to the owner, occupant, mortgagee, lessee and all other persons having an interest in said building as shown on the land records of the deed registration files of the Borough and/or the Recorder of Deeds of the County of Jefferson to the last known address of each, and a copy of such notice shall be posted in a conspicuous place on the dangerous building to which it relates. Such mailing and posting shall be deemed adequate service. Where desirable, the notices and orders provided for herein may be served in the same manner a summons is served in the courts of general jurisdiction.

(emphasis added).

In *Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309 (1995), the owners of a fire-damaged building filed a petition for appointment of viewers arguing that the demolition of the building without prior notice was a *de facto* taking. The City of Wilkes–Barre took this action pursuant to a section of the Wilkes–Barre Code which provides that the City may take immediate action to render a building safe if it finds that the building constitutes an immediate danger. The City filed preliminary objections, which the trial court sustained and dismissed the petition. This Court affirmed on appeal and the Supreme Court denied the petition for allowance of appeal. Thereafter, the owners of the building sought damages under 42 U.S.C. § 1983. The City filed a motion for summary judgment arguing that the Section 1983 action was barred by *res judicata* or collateral estoppel. The trial court denied the motion and the case proceeded to a jury trial. The jury awarded the owners damages, and the City appealed to this Court, which affirmed. On appeal, the Supreme Court reversed and held that:

Eminent domain is the power to take property for public use. The City must provide just compensation for any property taken pursuant to this power. The police power, on the other hand, involves the regulation of property to promote the health, safety and general welfare of the people. *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926). It does not require that the City provide compensation to the property owner, even if the property is damaged or destroyed. *Id.*

The taking of property, whether it be under the City's police power or under the eminent domain provisions, is subject to the Constitutional mandates of the Fifth and the Fourteenth Amendments. Under the Fourteenth Amendment, property cannot be taken except by due process of law. **However, regulation under a proper exercise of the police power is due process, even**

though property in whole or in part is taken or destroyed. *Id.* at 264, 134 A. at 411. As the court in *White's Appeal* appropriately stated:

> No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulation by the government clearly necessary to preserve the health, safety or morals of the people. Obedience to such regulation is not taking property without due process; that clause does not qualify the police power. (citations omitted). Property is held under the implied obligation that the owner shall use it in such way as not to be injurious to the community.

287 Pa. at 265, 134 A. at 411–12. The conditions on which exercise of police power is predicated should actually exist or be so likely that action is necessary. *Id.* Moreover, **there should be a reasonable and substantial relation between the thing acted on and the end to be attained.** *Id.*

*Id.* at 565–566, 669 A.2d at 314. The Court further concluded that:

> If there is doubt as to whether the statute is enacted for a legitimate police object, or if, conceding the statute's purpose, its exercise goes too far, then the judiciary has a duty to declare the given exercise of the police power invalid. *Id.* at 265, 134 A. at 411. Judicial investigation into the validity of the police power should not scrutinize the wisdom of the policy emanating from the legislative branch, or whether the best means of achieving the desired result have been selected. *Id.* The court should examine only whether the statute has a recognized police purpose, and whether the purpose has a reasonable relation to the object to be attained. *Id.*

Under *res judicata*, the Owners are barred from litigating claims that were or could have been raised in the prior action which resulted in a final judgment on the merits, so long as the claims derive from the same cause of action. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414, 66 L.Ed.2d 308 (1980). As courts have often recognized, the purpose of this doctrine is to relieve the parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudications. *Id.*

In the majority opinion in *Balent I*, the court recognized that only actions taken under a valid exercise of police power result in a non-compensable taking. Without delineating its analysis, the majority simply held that the Owners' building was demolished pursuant to the City's police power and that it did not constitute a compensable taking. Nonetheless, we must assume that the court properly considered the constitutional implications, before making its final determination that the taking was non-compensable.

*Id.* at 566–567, 669 A.2d at 315 (emphasis added). Accordingly, the Supreme Court determined that the Section 1983 action was barred by *res judicata* and it therefore reversed the decision of this Court.

Furthermore, in *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. 115 371 A.2d 461 (1977), our Supreme Court set forth that:

> '(T)he very essence of the police power (as distinguished from the power to eminent domain) is that the deprivation of individual rights and property without compensation cannot prevent its operation, so long as its exercise is proper and reasonable.' *People v. K. Sakai Co.*, 56 Cal.App.3d 531, 538, 128 Cal.Rptr. 536, 541 (1976). This distinc-

tion was explained by the United States Supreme Court in *Mugler v. Kansas,* 123 U.S. 623, 668–69, 8 S.Ct. 273, 301, 31 L.Ed. 205 (1887): 'A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, **cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit**.... The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community.'

*Id.* at 127–128, 371 A.2d at 467 (emphasis added).

▬ In this case, Appellant argues that his due process rights were violated because the Borough took his property without due process of law. However, that is not what occurred. In this case, the Borough exercised its police powers, which is a power that is distinguishable from the exercise of the power of eminent domain. *Barnes and Tucker.* It is well-settled that the exercise of the police power is not a taking. *Id.* Having resolved this issue, we will proceed to consider whether the Borough properly exercised its police powers in this case.

▬ First, we note that Appellant cites Section 3 of the Fire Prevention Law for Cities of the Second Class, Act of May 13, 1915, P.L. 297, 53 P.S. § 25094, and several cases dealing with Section 3 for the proposition that he was entitled to notice before his building was demolished. How-

ever, that section is applicable to cities of the second class. In this case, Appellant's building was located in the Borough of Punxsutawney. Therefore, we must look to the Borough Code for guidance as to whether the Borough's actions in this case were proper.

Pursuant to Section 1205(5) of the Borough Code, boroughs have the power to remove dangerous structures. With this authority, the Borough of Punxsutawney enacted Section 94–8 of the Punxsutawney Borough Code, which provides that buildings may be immediately demolished when it "reasonably appears that there is immediate danger to life or safety of any person." Section 94–9 of the Punxsutawney Borough Code further provides that notice shall be provided "except in emergency cases." This is a police power that enables the Borough of Punxsutawney to promote and preserve the health, safety and general welfare of the people in the Borough. Specifically, this power enables the Borough to remove buildings that are dangerous because they are in danger of collapse and thus capable of injuring or killing people in the Borough. The power of the Borough to do this without notice helps the Borough protect the health, safety and welfare of the people in the Borough because in such a dangerous situation the delay that notice would entail could possibly allow the dangerous condition to become worse. Thus, there is a reasonable and substantial relationship between the demolition of dangerous buildings and the health, safety and welfare of the people in the Borough. Therefore, the demolition of buildings in emergency situations is a valid of exercise of the police power by a borough.

▬ For this police power to be exercised properly, the conditions on which that power is predicated must actually exist. *Balent.* Our review of the trial

court's opinion reveals that its findings of fact and its conclusion that Appellant's building was a public nuisance are supported by the evidence. Specifically, the testimony of witnesses revealed that the building was partially demolished by Appellant and that this partial demolition caused the building to become unstable. Then, the building was left in this unstable condition by Appellant for more than a year and the building continued to deteriorate. In this condition, the walls of the partially demolished building were leaning and bricks were falling from the building. This created a situation in which there was an immediate danger to the life or safety of people near the building. Pursuant to Section 94–8 of the Punxsutawney Borough Code, the Borough was empowered to demolish Appellant's building without notice. Therefore, because the demolition of dangerous buildings is a valid exercise of the police power and because the conditions that prompted the Borough in this case to proceed with the demolition of Appellant's building actually existed, the trial court did not err by entering judgment against Appellant and thus did not abuse its discretion or commit an error of law by denying Appellant's Motion for Post–Trial Relief.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, December 21, 2005, the order of the Court of Common Pleas of Jefferson County is hereby AFFIRMED.