IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Keenhold, Jr., Danny : 
Keenhold, and Keenhold Associates, : 
              Appellants : 
 : 
             v. : 
 : 
Commonwealth of Pennsylvania, :   No. 494 C.D. 2020
Department of Labor and Industry :   Argued: April 15, 2021

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: June 29, 2021

        Richard Keenhold, Jr., Danny Keenhold, and Keenhold Associates (collectively, the Keenholds) appeal the April 30, 2020 order of the Court of Common Pleas of Northampton County (trial court) that sustained the preliminary objections (Preliminary Objections) filed by the Commonwealth of Pennsylvania, Department of Labor and Industry (Department) and denied the Keenholds' Petition for the Appointment of a Board of Viewers for the Assessment of Damages (Petition) that alleged a *de facto* taking of their property by the Department under

Section 502(c) of the Eminent Domain Code (Code),[1] 26 Pa.C.S. § 502(c).  Upon review, we affirm.

## I.  Background

The Keenholds own a property located at 34 8th Street, Wind Gap Borough, Northampton County (Property), which is improved with a multi-unit apartment building, the units of which they have rented out to tenants for years.  *See* Petition at 2 (pagination supplied), ¶¶ 5-6, Reproduced Record (R.R.) at 3a; *see also* Trial Court Order & Opinion and Statement of Reasons filed April 30, 2020 (Trial Court Opinion) at 2, R.R. at 172a.  Over the years, the Property has been the subject of numerous Notices of Violation issued by the Department for violations of the Pennsylvania Construction Code Act (PCCA)[2] and the Uniform Construction Code (UCC).[3]

Following a December 8, 2011 inspection of the Property, the Department issued[4] Notice of Violation 248098, which cited a total of 13 UCC violations at the Property.  *See* Notice of Violation 248098,[5] attached as Exhibit 2 to

---

[1] 26 Pa.C.S. §§ 101-1106.

[2] 35 P.S. §§ 7210.101-7210.1103.

[3] 34 Pa. Code §§ 401.1-401.16.

[4] Prior to Wind Gap Borough's formal adoption of the requirements of the PCCA and UCC by Wind Gap Borough Ordinance No. 493 (Ordinance 493) on October 28, 2018, the Department, through the Bureau of Occupational and Industrial Safety, was charged with enforcing the administration of the PCCA and UCC with respect to structures within Wind Gap Borough, including the Property.  *See* 35 P.S. § 7210.501; 34 Pa. Code § 403.103.  Following the enactment of Ordinance 493, Wind Gap Borough became responsible for its own PCCA/UCC enforcement.

[5] The Keenholds allege that the Department rescinded Notice of Violation 248098 in March 2013.  *See* Petition at 2.  The Department denies this claim, explaining that no evidence exists

Respondent's Answer to Petition for the Appointment of Viewers and New Matter, at 1-4, R.R. at 26a-29a. The first four violations listed in Notice of Violation 248098 concerned the electrical panel in Property Apartment D, exposed wiring at the Property, a lack of fire alarms in the Property's storage spaces, and the inoperability of some of the Property's battery-operated smoke detectors. *See* Notice of Violation 248098 at 1-2, R.R. at 26a-27a; *see also* Trial Court Opinion at 2-3, R.R. at 172a-73a. Notice of Violation 248098 warned that a failure to remedy the listed violations within seven days would result in the Department declaring the Property unsafe and the issuance of an Order to Vacate. *See* Notice of Violation 248098 at 2, R.R. at 27a; *see also* Trial Court Opinion at 2-3, R.R. at 172a-73a. Notice of Violation 248098 also listed nine further UCC violations at the Property: the lack of an occupancy permit; the lack of approved building plans; the inability to determine fire separation between storage spaces and apartment units; the inability to determine fire separation between the apartments themselves; improper fire extinguishers; a lack of handrails on steps from the foyer to a second floor of one apartment; a lack of handrails on the main entrance and second exit steps from another apartment; improper guardrail height on a common deck; and a lack of handrails on two sets of common deck egress stairs. *See* Notice of Violation 248098 at 2-3, R.R. at 27a-28a; *see also* Trial Court Opinion at 3, R.R. at 173a. Notice of Violation 248098 did not include with these final nine listed violations the same 7-day warning issued for the first four violations. *See* Notice of Violation 248098 at 3, R.R. 28a; *see also* Trial Court Opinion at 3, R.R. 173a.

---

indicating the Department ever rescinded the Notice of Violation. *See* Respondent's Answer to Petition for the Appointment of Viewers and New Matter (Answer to Petition) at 2, R.R. at 12a; *see also* Trial Court Opinion at 3.

On August 8, 2013, the Department approved building plans submitted by the Keenholds and issued a building permit for the Property. *See* Trial Court Opinion at 4, R.R. at 174a. Subsequent Department inspections of the Property resulted in the October 15, 2013 issuance of Notice of Violation 248107, which outlined continuing and new UCC violations at the Property and provided a December 19, 2013 date by which the Keenholds needed to remedy the violations. *See* Trial Court Opinion at 4, R.R. at 174a; *see also* Department of Labor & Industry Industrial Board Adjudication, File No. 503168 (Board Adjudication) at 1-2, R.R. at 39a-40a.

In early 2014, Richard Keenhold sought variances from the Department's Labor & Industry Board (Board) to waive the fire rated separation requirements between the Property's storage spaces and apartments and the apartments themselves that had formed part of the violations previously noted in Notice of Violation 248098. *See* Trial Court Opinion at 5, R.R. at 39a-47a & 175a; Board Adjudication at 2, R.R. at 40a. Thereafter, an inspection of the Property conducted on February 21, 2014 found that the Keenholds had remedied only one of the previous 14 violations cited in Notice of Violation 248107. *See* Trial Court Opinion at 5, R.R. at 175a; Board Adjudication at 2, R.R. at 40a. After conducting an evidentiary hearing, the Board noted that the Keenholds failed to demonstrate: (1) that the previously cited UCC violations did not affect the safety of Property tenants; (2) that the Keenholds were attempting to make the Property UCC-compliant as quickly as possible; and (3) that the Property was equipped with compensatory safety features that would provide an equivalent degree of protection to that required by the UCC. *See* Board Adjudication at 7-9, R.R. at 45a-47a. Ultimately, the Board concluded that the Keenholds' continued non-compliance

4

with UCC requirements unreasonably affected the safety of the Property's tenants and so denied the requested variances. *See* Board Adjudication at 9, R.R. at 47a.

Additionally, in 2012 and again in 2015, the Department brought criminal charges against Richard Keenhold for UCC violations at the Property. *See* Docket No. MJ-03302-CR-0000329-2012, R.R. at 31a-33a; Docket No. MJ-0332-NT-0000439-2015, R.R. at 35a-37a. Richard Keenhold pleaded guilty before a magisterial district judge in both cases. *See id.*

On April 9, 2014, the Department issued an order to show cause upon the Keenholds demanding they show why the Property should not be vacated as a result of the failure to resolve the violations of Notice of Violation 248107. *See* Trial Court Opinion at 5-6, R.R. at 175a-76a. The Department issued the same order to show cause again in early June of 2014. *See id.* at 6, R.R. at 176a.

On May 17, 2016, the Department filed a complaint in this Court seeking the enforcement of the Notices of Violations previously issued for violations at the Property that the Keenholds had not yet remedied. *See* Complaint filed May 17, 2016 at Commonwealth Court Docket No. 306 M.D. 2016 (Complaint), R.R. at 55a-67a. After the Keenholds failed to answer the Complaint, this Court granted the Department's Motion for Summary Judgment and, on August 25, 2016, entered an Order/Final Decree (Final Decree) requiring the Keenholds to vacate the apartments and dwelling units at the Property and enjoining the use of those apartments until the Property was brought into compliance with UCC requirements. *See* Final Decree, R.R. at 49a-51a. The Keenholds did not appeal the Final Decree.

A subsequent inspection of the Property conducted on December 14, 2016, revealed that, although certain violations had been remedied, 11 of the 14 UCC violations remained unresolved. *See* Department Inspection Compliance Report

5

dated December 14, 2016, R.R. at 69a-70a. Nearly a year later, on November 29, 2017, a Department inspector observed non-permitted construction activities occurring at the Property. *See* Trial Court Opinion at 6-7, R.R. 176a-77a. Accordingly, the Department entered a stop work order on December 1, 2017. *See* Trial Court Opinion at 7, R.R. at 177a.

Despite the issuance of the stop work order, the Keenholds, believing they would be able to resolve their issues with the Department, entered into an agreement for sale of the Property with a third party. *See* Trial Court Opinion at 7, R.R. at 177a. The Keenholds allege that the Department refused the third-party purchaser's requests to meet with Department inspectors to discuss the Property. *See id.*

On May 15, 2018, the Keenholds submitted a new application for a building permit so they could complete work on the Property and have the Property inspected for sale to the third party. *See* Trial Court Opinion at 8, R.R. at 178a. However, the Department denied the application because the Keenholds failed to comply with statutory filing requirements.[6] *See id.* At some point thereafter, the third party cancelled the purchase of the Property. *See* Petition at 6, ¶ 36, R.R. at 7a.

The Keenholds filed the Petition on January 18, 2020. In the Petition, the Keenholds allege a *de facto* taking under Section 502(c) of the Code, 26 Pa.C.S. § 502(c), by the Department through the Department's enforcement of the PCCA/UCC. *See* Petition at 6-7, ¶¶ 39-42, R.R. at 7a-8a. Specifically, the Keenholds assert that they have been substantially denied the beneficial use and

---

[6] Applicants must submit three sets of relevant documents to the Department for building permit application consideration. *See* 34 Pa. Code. § 403.42a(b). The Keenholds failed to provide the requisite three copies of relevant documents with their building permit application. *See* Trial Court Opinion at 8, R.R. at 178a.

6

enjoyment of the Property and are "left with a property that [they] cannot sell, nor rent to third parties due to the issues with [the Department] and the inability to obtain the necessary permits in order to be in a position to address the alleged deficiencies." Petition at 6, ¶ 37, R.R. at 7a.

On November 7, 2019, the Department filed the Preliminary Objections in the trial court, raising four objections. *See* Preliminary Objections, R.R. at 81a-170a. The first three Preliminary Objections respectively argued that the Petition fails to state a claim for a *de facto* taking because: (1) the Department lacks authority to condemn the Property, *see* Preliminary Objections at 4-5 (pagination supplied), R.R. at 84a-85a; (2) the Keenholds cannot establish that exceptional circumstances exist that substantially deprive them of the beneficial use and enjoyment of the Property, *see* Preliminary Objections at 5-8, R.R. at 85a-88a; and (3) the deprivation was not a consequence of the Department's power to condemn, *see* Preliminary Objections at 8-9, R.R. at 88a-89a. In its fourth Preliminary Objection, the Department argued that the Keenholds failed to exhaust available administrative remedies. *See* Preliminary Objections at 10-11, R.R. at 90a-91a.

Following oral argument, on April 30, 2020, the trial court entered an order sustaining each of the Preliminary Objections and denying the Petition. This appeal followed.[7]

---

[7] "Preliminary objections are the exclusive method under the [] Code of raising legal and factual objections to a petition for appointment of viewers which alleges a *de facto* taking." *Pileggi v. Newton Twp.*, 245 A.3d 377 n.4 (Pa. Cmwlth. 2021) (quoting *German v. City of Philadelphia*, 683 A.2d 323, 325 n.5 (Pa. Cmwlth. 1996)). "When a court of common pleas sustains preliminary objections and dismisses a petition, our scope of review is limited to determining whether the trial court committed an error of law and whether findings are supported by competent evidence." *Id.*

## II. Issues

On appeal, the Keenholds argue that the trial court erred by sustaining each of the Department's Preliminary Objections. *See* Keenholds' Br. at 4-5 & 16-36. First, the Keenholds argue that the trial court erred in sustaining the Preliminary Objections without taking evidence, because the Petition alleges fact which, if proven, establish a *de facto* taking by the Department. *See* Keenholds' Br. at 4 & 22. Second, the Keenholds argue that the trial court erred by determining the Department was not an acquiring agency with the power of eminent domain. *See* Keenholds' Br. at 4 & 22-25. Third, the Keenholds argue the trial court erred by determining that the Keenholds were not displaced persons as defined by Section 502 of the Code. *See* Keenholds' Br. at 4 & 25-26. Fourth, the Keenholds claim that the trial court erred by determining that the Keenholds failed to allege facts sufficient to establish that the Department's actions deprived them of the beneficial use and enjoyment of the Property. *See* Keenholds' Br. at 4-5 & 26-28. Fifth, the Keenholds argue the trial court erred by finding the Keenholds failed to allege exceptional circumstances. *See* Keenholds' Br. at 5 & 28-30. Sixth, the Keenholds allege the trial court erred by determining the Department's actions arose from the proper use of police powers. *See* Keenholds' Br. at 5 & 30-33. In their final claim, the Keenholds argue the trial court erred by sustaining the Preliminary Objection that alleged the Keenholds failed to exhaust available administrative remedies. *See* Keenholds' Br. at 5 & 33-34.

## III. Discussion

Section 502(c) of the Code allows a property owner who asserts that its property interest has been condemned without the filing of a declaration of taking to

8

file a petition for the appointment of viewers setting forth the factual basis of the petition. *See* 26 Pa.C.S. § 502(c)(1). "[T]he Code provides the *exclusive* method and practice governing eminent domain proceedings, including *de facto* takings, and [] preliminary objections are the exclusive method of raising objections to a petition for appointment of viewers alleging a *de facto* taking." *York Rd. Realty Co., L.P. v. Cheltenham Twp.*, 136 A.3d 1047, 1050 (Pa. Cmwlth. 2016) (quoting *Gerg v. Twp. of Fox,* 107 A.3d 849, 852 (Pa. Cmwlth. 2015)) (emphasis in original) (brackets omitted); *see also* Section 502 of the Code, 26 Pa.C.S. § 502. However,

> [i]n eminent domain proceedings, preliminary objections serve a broader purpose than ordinary preliminary objections and are intended as a procedure to expeditiously resolve threshold legal issues[.] Indeed, the trial court must first determine whether a *de facto* taking has occurred before sending the matter to a board of view to determine damages.

*Hill v. City of Bethlehem*, 909 A.2d 439, 442 n.8 (Pa. Cmwlth. 2006) (internal citations omitted). Therefore, when preliminary objections are filed in a *de facto* taking case,

> [a] trial court must determine first whether, as a matter of law, the averments of the petition for the appointment of viewers, taken as true, in addition to any stipulated facts, are sufficient to state a cause of action for a *de facto* taking. If not, the preliminary objections must be sustained and the petition dismissed or allowed to be amended.

*Hill*, 909 A.2d at 443 (quoting *Stein v. City of Philadelphia*, 557 A.2d 1137, 1140 (Pa. Cmwlth. 1989)).

> The decision of whether a compensable taking has occurred requires an initial determination that the act

9

> complained of was, in fact, an exercise of eminent domain power. Acts not done in the exercise of the right of eminent domain and not the immediate, necessary or unavoidable consequences of such exercise cannot be the basis of a proceeding in eminent domain.

*German v. City of Philadelphia*, 683 A.2d 323, 326–27 (Pa. Cmwlth. 1996).

"A *de facto* taking is not a physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property.[8]" *York*, 136 A.3d 1047, 1050–51 (quoting *In re Borough of Blakely*, 25 A.3d 458, 463-64 (Pa. Cmwlth. 2011)) (emphasis omitted). The law is well-settled that:

> In order to prove a *de facto* taking, the property owner must establish exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property. This deprivation must be caused by the actions of an entity with eminent domain powers. Also, the damages sustained must be an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers.

*Id.* at 1050–51 (quoting *In re Borough of Blakely*, 25 A.3d 458, 463-64 (Pa. Cmwlth. 2011)) (emphasis and footnote omitted). Thus, "[a] property owner carries a heavy burden of proof in *de facto* condemnation proceedings and must show that: (1) the condemnor has the power to condemn the land under eminent domain procedures; (2) that exceptional circumstances have substantially deprived him of the use and enjoyment of his property; and (3) the damages sustained were the immediate, necessary, and unavoidable consequences of the exercise of the eminent domain

---

[8] "The beneficial use of the property includes not only its present use, but all potential uses, including its highest and best use." *York*, 136 A.3d at 51.

power." *In Re Mountaintop Area Joint Sanitary Auth.*, 166 A.3d 553, 561 (Pa. Cmwlth. 2017); *see also York*, 136 A.3d at 1050–51. No bright line test exists to determine whether a government action has resulted in a *de facto* taking; each case presents a fact-specific inquiry. *See York*, 136 A.3d at 1050–51. "[W]hen determining whether a *de facto* taking has occurred, we focus on the governmental action in question." *Mountaintop Area Joint Sanitary Auth.*, 166 A.3d at 561.

## A. Eminent Domain Power

The Department's first Preliminary Objection argued that the Petition failed to state a claim for a *de facto* taking because the Department lacks the power to condemn pursuant to the Code. *See* Preliminary Objections at 4-5, R.R. at 84a-85a. The Department argued that no statute empowers to the Department, the alleged condemnor in this matter, with the power to condemn property. *See* Preliminary Objections at 4, ¶ 18, R.R. at 84a. As a result, the Department claimed it had no power of eminent domain upon which to base a *de facto* taking claim. *See* Preliminary Objections at 4-5, ¶¶ 18-21, R.R. at 84a-85a.

Without citation to statutory or regulatory authority, the Petition alleges that "the [Department] is [a] body politic with the authority to condemn real property." Petition at 6, ¶ 38, R.R. at 7a. The Petition further alleges that the Department's actions made it an "acquiring agency" under the Code and further rendered the Keenholds "displaced persons" under the Code. *See* Petition at 6, ¶ 40, R.R. at 7a; *see also* Keenholds' Br. at 22-25.

This Court has determined that "that a *de facto* taking [determination] must begin with an examination of whether the condemnor is an entity that has the power of eminent domain." *Env't Indus., Inc. v. Casey*, 675 A.2d 392, 395 (Pa.

Cmwlth. 1996). The Court found that, "[w]ithout that power vested in an alleged condemnor, no cause of action for a *de facto* taking can stand." *Env't Indus.*, 675 A.2d at 395; *see also Rowland v. Com.*, 820 A.2d 896, 899 (Pa. Cmwlth. 2003) (finding that no *de facto* cause of action may stand where an alleged condemnor does not have the power of eminent domain). Therefore, this Court has determined that a party fails to state a cause of action for a *de facto* taking where the party fails to provide statutory and/or regulatory citations that impart eminent domain power on the defendant. *See Env't Indus.*, 675 A.2d at 395.

The Code defines "acquiring agency" as "[a]ny entity, including the Commonwealth, ***vested with the power of eminent domain by the laws of this Commonwealth***." 26 Pa.C.S. § 103 (emphasis provided). Concerning special damages for displacement, Section 901 of the Code defines "acquiring agency" as "an agency or person that is carrying out a program or project to the extent that the agency or person causes a person to become a displaced person.[]" 26 Pa.C.S. § 901. The Code defines a "displaced person" as any of the following:

> (i) A condemnee or other person that moves from real property or moves personal property from real property:
>
> (A) as a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part, for a program or project undertaken by an acquiring agency; or
>
> (B) on which such person is a residential tenant or conducts a small business or a farm operation as a direct result of rehabilitation, demolition or other displacing activity for a program or project undertaken by an acquiring agency if the displacement is permanent.

12

(ii) A person that was in occupancy of the real property on or before the date of acquisition, notwithstanding the termination or expiration of a lease entered into before or after the event giving rise to the displacement.

26 Pa.C.S. § 103.[9]  Further, this Court has determined that, even where a party fits the definition of an acquiring agency, a failure to plead statutory eminent domain authority is fatal to *de facto* taking claims.  *Env't Indus.*, 675 A.2d and 395.

The trial court here noted that the Petition failed to plead any statutory or regulatory authority that established that the Department has been delegated the power of eminent domain.  *See* Trial Court Opinion at 15, R.R. 184a.  The trial court further determined that, absent the citation of proper eminent domain delegating authority, the Department does not fit the definition of an "acquiring agency."  *See id.* at 15-16, R.R. at 184a-85a.  As a result, the trial court concluded that the Petition fails to state a claim for a *de facto* taking and sustained the first Preliminary Objection.  *See id.* at 16, R.R. 185a.

We find no error in the trial court's determination.  The Keenholds point to no statutory or regulatory eminent domain authority held by the Department.  Without a statutory power of condemnation, the Department lacks the power of

---

[9] The definition expressly excludes:

(i) A person that unlawfully occupies the displacement property or occupied the property for the purpose of obtaining assistance under this title.

(ii) In any case in which the acquiring agency acquires real property for a program or project, a person, other than a person that was an occupant of the property at the time it was acquired, that occupies the property on a rental basis for a short term or a period subject to termination when the property is needed for the program or project.

26 Pa.C.S. § 103.

13

eminent domain. *See Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 579 (Pa. 2014) (eminent domain power can only be exercised within the limitations established by law). As an entity without eminent domain power, the Department cannot effect a *de facto* taking. *See York*, 136 A.3d at 1050–51. Further, without such power, an entity does not qualify as an "acquiring agency" under the Code because it is not "vested with the power of eminent domain under the laws of this Commonwealth." *See* Acquiring Agency Definition, 26 Pa.C.S. § 103.[10] Additionally, because it does not qualify as an "acquiring agency," the Department cannot have caused the Keenholds to become "displaced persons" under the Code. *See* Displaced Person Definition, 26 Pa.C.S. § 103. The trial court did not err in granting the first Preliminary Objection based on the Department's lack of eminent domain condemnation power.

## B. Substantial Deprivation of the Beneficial Use and Enjoyment of the Property

Next, the Keenholds argue that the trial court erred by determining that the Petition failed to illustrate that the Department substantially deprived them of the beneficial use and enjoyment of the Property. *See* Keenholds' Br. at 26-30. The Keenholds argue that an inability to rent or sell the Property "are obviously relevant to whether the [P]roperty is no longer income-producing and thus whether it has lost its commercial use." *Id.* at 27. The Keenholds claim they have been substantially deprived of the beneficial use of the Property because the actions of the Department

---

[10] We note that the definition of "acquiring agency" contained in Section 901 of the Code and relied upon by the Keenholds applies to the determination of special damages after a trial court determination finding that a *de facto* taking has occurred. *See* 26 Pa.C.S. § 901. Because the Keenholds have not satisfied the threshold Section 103 definition of "acquiring agency" through citation to proper authority illustrating the Department's power to condemn, a further examination under Section 901 of the Code is not warranted in this case.

14

have cost them their rental tenants and a potential buyer of the Property. *See id.* at 28.

An allegation that consists merely of the legal conclusion that a *de facto* taking has occurred will not carry a property owner's heavy burden of proving the existence of exceptional circumstances that that substantially deprived the property owner of the use and enjoyment of their property. *See Borough of Barnesboro v. Pawlowski*, 514 A.2d 268, 270 (Pa. Cmwlth. 1986); *see also York*, 136 A.3d 1047, 1050-51. Further, as stated *supra*, the damages sustained in *de facto* taking cases must result from the "immediate, necessary, and unavoidable consequences of the exercise of the eminent domain power." *Mountaintop Area Joint Sanitary Auth.*, 166 A.3d at 561. Therefore, "acts that are not the immediate, necessary or unavoidable consequence of the exercise of eminent domain will not form the basis of *de facto* condemnation." *Id.*

Here, the Department argues that any deprivation of the beneficial use and enjoyment of the Property suffered by the Keenholds, including the inability to rent and/or sell the Property, was occasioned, not by the Department's actions, but by the Keenholds' own doing. *See* Department Br. at 10-14. The Department claims that, far from alleging that the Department's actions caused their claimed deprivations, the Petition's allegations instead concede that the Keenholds' own historical failure to remediate the PCCA/UCC violations at the Property caused the claimed deprivations. *See id.* Specifically, the Department notes that the Petition concedes that the Department issued numerous PCCA/UCC-based notices of violations and criminal charges over the years but was devoid of allegations claiming that the Property was ever brought in compliance with PCCA/UCC requirements,

15

directly requiring that the vacation of the Property and thus the loss of rental incomes. *See id.* at 11-12.

Likewise, the Department claims the Petition admits that the building permit for the Property was returned and not issued due to the Keenholds' failure to submit the proper number of applications and plans as required to complete the application process. *See* Department's Brief at 12. Regarding the sale of the Property, the Department further notes that the Keenholds admit that the Department advised that an inspection of the Property could not occur in the absence of a valid building permit, but that the Petition alleged no exceptional circumstances related to the Keenholds' failure to obtain the required building permit. *See id.* at 13. Based on the above, the Department argues that the alleged deprivations suffered by the Keenholds resulted not as a result of the Department's exercise of a power of eminent domain, but instead resulted from their own failure to bring the Property into compliance with PCCA/UCC requirements, and further that the alleged deprivations were abatable, preventable, and reparable. *See id.* at 13-14.

The trial court agreed with the Department, finding that "there are no exceptional circumstances that have substantially deprived the [Keenholds] of the beneficial use and enjoyment of the[ P]roperty, and . . . also . . . that any issues with the [Keenholds'] ability to sell or rent the [] Property derive from the [Keenholds'] inability to comply with the UCC and PCCA." *See* Trial Court Opinion at 18, R.R. at 186a. The trial court accordingly sustained the second Preliminary Objection. *See id.*

We find no error in the trial court's reasoning. The allegations of the Petition itself outline years of violation notices the Department issued in reference to the Property that resulted in the vacation of the Property. The Petition does not

16

allege that the violations were ever resolved or remedied. The Department documentation included as attachments to the pleadings in this case[11] confirm that the violations continued unresolved in the face of multiple notices of violations. The Petition further acknowledges that the inspection of the Property for the purpose of the third-party sale could not occur in the absence of valid building permit, and that the Department had not issued a building permit based on the Keenholds' failure to comply with building permit application requirements. The Petition therefore does not allege that exceptional circumstances occasioned by the Department's exercise of eminent domain created the alleged deprivations of the loss of rental income and an inability to sell the Property. Instead, the Petition outlines alleged deprivations occasioned by the Keenholds' own failure to comply with PCCA/UCC requirements, not from the immediate, necessary, and unavoidable consequences of the exercise of the eminent domain power required to form the basis of an allegation of *de facto* taking. Thus, the trial court did not err in sustaining the Department's second Preliminary Objection.

**C. Alleged Deprivation Occasioned By Exercise of Police Power**

Next, the Keenholds claim that the trial court erred in granting the third Preliminary Objection, which alleged that the Department's actions arose from the proper use of its police powers, not the exercise of eminent domain powers. *See* Keenholds' Br. at 30-33; *see also* Preliminary Objections at 8-9, R.R. at 88a-89a. We do not agree.

---

[11] "Courts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Freemore v. Dep't of Corr.*, 231 A.3d 33, 37 (Pa. Cmwlth. 2020) (quoting *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)) (internal brackets omitted).

17

"It is well-settled that the exercise of the police power is not a taking." *Est. of Blose ex rel. Blose v. Borough of Punxsutawney*, 889 A.2d 653, 659 (Pa. Cmwlth. 2005). "[T]he very essence of the police power (as distinguished from the power to eminent domain) is that the deprivation of individual rights and property without compensation cannot prevent its operation, so long as its exercise is proper and reasonable." *Est. of Blose*, 889 A.2d at 658 (quoting *Commonwealth v. Barnes & Tucker Co.,* 371 A.2d 461, 467 (Pa. 1977)) (emphasis and internal quotation marks omitted). This Court has echoed the long-held pronouncement of the Supreme Court of the United States that

> [a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, **cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit**. . . . The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public is not—and, consistently with the existence and safety of organized society, cannot be—burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community.

*Est. of Blose*, 889 A.2d at 659 (quoting *Mugler v. Kansas,* 123 U.S. 623, 668–69 (1887)) (emphasis in original).

Based on this, the trial court sustained the third Preliminary Objection, concluding that

> the [Department] was enforcing the provisions of the UCC and PCCA. We find that the subject enforcement aligned with the [Department's] police powers. We also note that

18

the enforcement was reasonable. The [Keenholds] were cited for a multitude of UCC violations over the years, including, but not limited to, the lack of fire alarms, the lack of hand rails, the lack of one-hour rated fire separation walls, and the incorrect type of fire extinguishers. These violations are prejudicial to the health, the morals, or the public safety. Specifically, the violations placed the [Keenholds'] tenants at risk. The alleged exceptional circumstances complained about were procedural aspects of the UCC. Therefore, we find that the [Department's] actions were part of its police powers, and the execution of those powers were proper and reasonable.

Trial Court Opinion at 19-20, R.R. at 187a-88a (internal quotation marks and citation omitted).

We agree. As the trial court noted, the Department acted to enforce the Code and the requirements of the PCCA and the UCC, which were enacted, among other reasons, "to provide standards for the protection of life, health, property and environment and for the safety and welfare of the consumer, general public and the owners and occupants of buildings and structures." 35 P.S § 7210.102(b)(1). The Department's actions, as alleged in the Petition, therefore amount to the exercise of its police power. The exercise of police power in this fashion does not, as a matter of law, amount to a taking. *Est. of Blose*, 889 A.2d at 659. Accordingly, the trial court did not err in sustaining the third Preliminary Objection.

## D. Failure to Exhaust Administrative Remedies

Finally, the Keenholds argue that the trial court erred by sustaining the fourth Preliminary Objection, which argued that they had failed to exhaust their available administrative remedies. *See* Keenholds' Br. at 33-35; *see also* Preliminary Objections at 10-11, R.R. at 90a-91a.

19

Eminent domain law does not provide relief for "speculative and conjectural" claims. *Blakely*, 25 A.3d at 467. The Petition makes no allegations that the Keenholds pursued any action with the Department following the return of their building permit application in 2018 or otherwise sought a building permit through Wind Gap Borough following the October 28, 2018 enactment of Ordinance 493.[12] The trial court noted that the Keenholds' claims were based on their inability to comply with the UCC and PCCA. *See* Trial Court Opinion at 20-21, R.R. at 188a-89a. The trial court also found that the Keenholds failed to even attempt to comply with Ordinance 493, noting that it appeared to the trial court "that it was incumbent upon the [Keenholds] to have at least complied with Wind Gap Ordinance No. 493 to support the argument that it was deprived of any meaningful use of its land." *See id.* The trial court found that these facts together rendered the claims of the Petition speculative and conjectural and did not entitle the Keenholds to relief. *See id.* at 21, R.R. at 189a.

We again agree with the trial court's analysis. The Petition does not allege that the Keenholds properly complied with the requirements of either the Department or Wind Gap Ordinance No. 493 to remedy the issues contained in the various notices of PCCA/UCC violations at the Property. Likewise, the Petition does not allege that the Keenholds sought to comply with the requirements of the either Department or Wind Gap Ordinance 493 to secure the building permit required to inspect the Property for purposes of the third-party sale. Accordingly, the trial court did not err by sustaining the fourth Preliminary Objection.

---

[12] *See* Note 4.

20

## IV. Conclusion

For the above reasons, we affirm the trial court's April 30, 2020 order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA


Richard Keenhold, Jr., Danny      :
Keenhold, and Keenhold Associates,  :
Appellants                      :
                                    :
v.                         :
                                    :
Commonwealth of Pennsylvania,    :   No. 494 C.D. 2020
Department of Labor and Industry   :


O R D E R


AND NOW, this 29th day of June, 2021, the April 30, 2020 order of the Court of Common Pleas of Northampton County is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge